UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO BENJAMIN CASTANEDA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　　Defendant. | Case No. EDCV 16-2528-JPR<br><br>**MEMORANDUM DECISION AND ORDER REVERSING COMMISSIONER** |

**I.　PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed August 22, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the

---

[1] Nancy A. Berryhill is substituted in as the correct Defendant. See Fed. R. Civ. P. 25(d).

1

Commissioner's decision is reversed and this action is remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born in 1965. (Administrative Record ("AR") 126, 139.) He has a third-grade education (AR 59, 105-06, 384) and last worked in 2012 as a welder (AR 149, 384).

On March 20 and 28, 2013, Plaintiff applied for DIB and SSI, respectively, alleging that he had been unable to work since January 30, 2012 (AR 321-24, 328-38), because of surgeries on his right elbow, hand, and wrist; elbow swelling; tendinosis;[2] tenderness, spasms, and decreased dermatomes in his right upper arm; tendonitis in his right arm; swelling from the right side of his neck to his right hand; high blood pressure; and anxiety attacks (see AR 126, 139). After his applications were denied initially and on reconsideration (see AR 137, 150, 215-19, 221-26), he requested a hearing before an Administrative Law Judge (AR 228-29). A first hearing was held on December 23, 2014 (AR 100-25), and a second hearing on April 23, 2015, at which Plaintiff, who was represented by counsel, testified, as did a medical and a vocational expert (AR 54-99). In a written decision issued May 28, 2015, the ALJ found Plaintiff not disabled. (AR 36-53.) Plaintiff requested review and submitted additional evidence. (See AR 25-26, 852-943.) On October 26,

---

[2] "Tendinosis" describes a chronically damaged tendon with disorganized fibers and a hard, thickened, scarred, and rubbery appearance. See Tendinitis or Tendinosis?, Cleveland Clinic, https://health.clevelandclinic.org/2016/11/tendinitis-tendinosis-difference-important-treatments-help/ (last updated Nov. 10, 2016).

2

2016, the Appeals Council denied review, finding that the additional evidence related to a later period and did not warrant changing the ALJ's decision. (AR 1-5.) The council ordered that the new evidence be made part of the administrative record. (AR 6.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial

3

gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments

does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform his past work; if so, he is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2012, the alleged onset date. (AR 38.) At step two, he concluded that he had severe impairments of "Bell's palsy; De Quervain's tendinitis of the right wrist; right elbow tendinosis status post epicondylectomy; cervical radiculopathy; and right shoulder

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

5

osteoarthritis." (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments falling under a Listing. (AR 42.)

At step four, the ALJ found that Plaintiff had the RFC to perform medium work, specifically noting that he could "lift and/or carry 50 pounds occasionally and 25 pounds frequently; push and pull on a frequent basis within the weight limitations described; and occasionally perform overhead work with the dominant right upper extremity." (AR 42.) He had "no limitations in standing, walking, or sitting[;] . . . [could] frequently stoop, bend, crawl, kneel, squat, and balance; and [could] frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds." (Id.) Based on the VE's testimony, the ALJ concluded that Plaintiff was "capable of performing [his] past relevant work as an arc welder and combination welder." (AR 47-48.) Thus, the ALJ found Plaintiff not disabled. (AR 48.)

**V. DISCUSSION**

Plaintiff argues that (1) the ALJ erred in evaluating the credibility of his subjective symptom statements and (2) "new and material evidence establishes that the [ALJ's RFC] assessment is not based on substantial evidence and free of legal error." (J. Stip. at 4.) Because the ALJ erred in the first regard, the matter must be remanded for further analysis and findings.

    A. <u>The ALJ Erred in Assessing the Credibility of Plaintiff's Subjective Symptom Statements</u>

Plaintiff argues that the ALJ "fail[ed] to provide clear and convincing reasons to reject [his] subjective symptoms." (See J.

6

Stip. at 14-18, 23.)  He is correct.

   1.   <u>Applicable law</u>

An ALJ's assessment of the credibility of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight."  See <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See <u>Lingenfelter</u>, 504 F.3d at 1035-36; <u>see also</u> SSR 96-7p, 1996 WL 374186 (July 2, 1996).[4]  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other

---

[4] Social Security Ruling 16-3p, 2016 WL 1119029, effective March 16, 2016, rescinded SSR 96-7p, which provided the framework for assessing the credibility of a claimant's statements.  SSR 16-3p was not in effect at the time of the ALJ's decision in this case, however, and therefore does not apply.  Still, the Ninth Circuit has clarified that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness."  <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (alterations in original) (quoting SSR 16-3p).

7

symptoms alleged." Lingenfelter, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the _degree_ of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

## 2. Relevant background[5]

On June 3, 2011, Plaintiff injured his right arm at work while lifting a metal bar with a crane. (AR 513, 586, 703.) He attended physical therapy and received a series of four injections. (See AR 465, 513, 690.) On November 9, 2011, he underwent surgery of the right arm to repair a lacerated tendon. (See AR 513, 526, 665, 693, 704.)

On May 12, 2012, an MRI of Plaintiff's right elbow showed "[a]bnormal hyperintense signal and thickening . . . in the common extensor tendon." (AR 500.) All other results were normal. (See id.) The radiologist's impression was that Plaintiff had "[t]endinosis of the common extensor tendon" and "[m]ild joint effusion." (AR 500-01.)

Dr. Arman Ghods, a chiropractor who initially saw Plaintiff on April 26, 2012, diagnosed him with failed right-elbow tendon

---

[5] Some medical notes were not in the record at the time of the ALJ's decision but were submitted to the Appeals Council. (See AR 6, 853-943.) Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also §§ 404.970(b), 416.1470(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163; see also Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651, 652 (9th Cir. 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing"). Although many of the newly submitted records are from after the ALJ's May 28, 2015 decision (see AR 855-76, 896-99, 925-36), some are from before (see AR 877-79, 884-95, 900-19, 937-43). The Court includes in its review those earlier records.

9

surgery, right-elbow teninosis, and insomnia.  (AR 487.)  On May
17, 2012, Dr. Ghods referred him to physiatrist[6] Ronald Schilling
for an electromyographic study of the cervical spine and upper
extremities.  (See AR 504-05.)  The EMG results showed an
"abnormal" "pattern consistent with a right C7 radiculopathy."
(AR 505.)  Dr. Schilling recommended "continued conservative care
for symptomatic relief."  (AR 507.)

On July 17, 2012, Plaintiff saw Dr. Archie Mays for an
orthopedic consultation.  (AR 512-18.)  Dr. Mays observed that
Plaintiff's "entire right upper extremity [was] swollen and . . .
edematous as compared to that of the left side."  (AR 515.)  He
had "global loss of sensation to the right upper extremity from
elbow down," and his "[r]eflexes [were] blunted on the right at
the brachial radialis, triceps, and biceps tendons."  (Id.)  Dr.
Mays diagnosed Plaintiff with "[r]ight elbow trauma disrupting
the common extensor tendon status post surgical intervention with
probably failed surgery" and recommended he "be seen by [a]
competent upper extremity orthopedic specialist for the
contemplation of revision surgery."  (AR 516.)  Although he
recommended that Plaintiff "continue with [medication and]
physical therapy," he opined that Plaintiff was "in need of more
aggressive concerns."  (Id.)  In July and August 2012, Plaintiff
received three shock-wave penetration procedures to treat the

---

[6] A physiatrist treats medical conditions affecting the brain, spinal cord, nerves, bones, joints, ligaments, muscles, and tendons.  See What is a Physiatrist?, American Academy of Physical Medicine and Rehabilitation, http://www.aapmr.org/about-physiatry/about-physical-medicine-rehabilitation/what-is-physiatry (last visited Jan. 22, 2018).

pain in his right elbow. (AR 523-24, 564.)

On June 11, 2013, Plaintiff saw consulting orthopedic surgeon Vicente Bernabe for an examination. (AR 465-69.) Plaintiff complained of "right elbow and wrist pain," "described as a sharp, dull, throbbing, burning pain in his right elbow that radiate[d] to [his] right wrist and into [his] neck." (AR 465.) His pain was "exacerbated by prolonged lifting, reaching and any use of the right arm." (Id.) Dr. Bernabe found "no instability of [Plaintiff's] right shoulder," but his right elbow "was very tender to palpation." (AR 467.) There also was "significant tenderness in the insertion of the extensor tendon into the lateral epicondyle against resisted supination and pronation." (Id.) "The inspection revealed normal alignment and contour" of both wrists, with "full and painless" range of motion "in all planes," but he had a "positive Finkelstein's test on the right wrist."[7] (Id.) "Overall, there was no cyanosis, clubbing, varicosities, edema, dermatitis, or ulcerations" in his extremities. (AR 468.) Dr. Bernabe diagnosed Plaintiff with "[c]hronic lateral epicondylitis of the right elbow" and "De Quervain's tendinitis of the right wrist." (AR 468-69.)

At Molina Medical Clinic on October 25, 2013, Plaintiff reported that he was "[g]etting injections," and a physical

---

[7] A positive Finkelstein test confirms a diagnosis of de Quervain's tenosynovitis. See Finkelstein Test, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/multimedia/finkelstein-test/img-20005987 (last visited Jan. 22, 2018). De Quervain's tenosynovitis is a painful inflammation of tendons in the thumb extending to the wrist. See What's de Quervain's Tenosynovitis?, WebMD, https://www.webmd.com/rheumatoid-arthritis/guide/de-quervains-disease (last updated Nov. 11, 2017).

11

examination showed he had "mild edema" and a "limited" range of motion in his right arm. (AR 600, 602.) His strength in that arm was rated a "2" out of "5." (AR 602.) It was recommended he "see [an] orthopedic specialist for [his] right arm injury," but he declined because he was "concerned that it [would] affect his workman's comp case." (AR 621-22.)

On August 18, 2014, Plaintiff saw Dr. Michele Van Dyke, a chiropractor. (AR 689-700.) Plaintiff complained of "constant right shoulder pain that radiated to [his] elbow and hand" and rated the pain at "9/10." (AR 691.) He also complained of "right hand/elbow pain" and "numbness/tingling in [his] right hand/forearm." (Id.) He "us[ed] a brace, splint and a TENS unit daily" and was apparently taking hydrocodone,[8] among other medications. (AR 692.) Dr. Van Dyke noted that Plaintiff had "[p]oor recovery" from his 2011 surgery and recommended "another surgical consultation" and a "possible steroid injection in [his] shoulder." (AR 697-98.)

On August 28, 2014, a second EMG study was "within normal limits," with "no evidence of entrapment neuropathy or peripheral neuropathy noted." (AR 668-74.) On September 16, 2014, Plaintiff saw Dr. Kourosh Noormand, a pain-management specialist, for evaluation of his right shoulder and elbow (AR 675-79), and Dr. Noormand diagnosed him with "[r]ight ulnar nerve neuropathy," "[r]ight hand reflex sympathetic dystrophy," and

---

[8] Hydrocodone is a narcotic medication used to relieve moderate to severe pain. See Hydrocodone-Acetaminophen, WebMD, https://www.webmd.com/drugs/2/drug-251/hydrocodone-acetaminophen-oral/details (last visited Jan. 22, 2018).

12

"[h]ypertension." (AR 677.) Dr. Noormand opined that Plaintiff would benefit from "comprehensive chronic pain management," recommended a "right stellate ganglion block,"[9] and gave him a "Toradol 60 mg IM injection."[10] (AR 678.) He also prescribed Neurontin[11] and trazodone.[12] (Id.)

Plaintiff also had ongoing issues related to his Bell's Palsy. He was diagnosed by neurologist Richard Tindall with a left hemifacial spasm as early as September 15, 2009. (See AR 455-56.) He visited the Arrowhead Regional Medical Center Clinic on November 5, 2013, seeking treatment for a "[f]acial [n]erve [d]isorder." (AR 628.) ENT-otolaryngologist Robbert Habbestad observed that Plaintiff had "nearly [one spasm] every 10 seconds," with each one "last[ing] several seconds," and diagnosed him with a facial nerve disorder. (See AR 735, 757.) Dr. Habbestad requested authorization for a Botox injection for

---

[9] A stellate ganglion block is an injection of local anesthetic typically used to treat pain caused by overactive nerves. See Stellate Ganglion Blocks, Centers for Pain Control, https://discover-cpc.com/pain-management/patient-education-information/stellate-ganglion-blocks/ (last visited Jan. 22, 2018). The injection often needs to be performed in a series to "retrain" those nerves to fire normally. Id.

[10] Toradol is given by injection into a muscle or vein and is used for the short-term treatment of moderate to severe pain. See Toradol Solution, WebMD, https://www.webmd.com/drugs/2/drug-6418/toradol-injection/details (last visited Jan. 22, 2018).

[11] Neurontin is an anticonvulsant used to relieve nerve pain in adults. See Neurontin Capsule, WebMD, https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last visited Jan. 22, 2018).

[12] Trazodone treats depression and decreases anxiety and insomnia related to depression. See Trazodone HCL, WebMD, https://www.webmd.com/drugs/2/drug-11188-89/trazodone-oral/trazodone-oral/details (last visited Jan. 22, 2018).

his upper and lower lid and brow. (AR 735-36, 738.) On October 22, 2014, Plaintiff received a Botox injection. (AR 756.) He stated that it gave him "some improvement" and requested authorization for another. (AR 940.) He received a second Botox injection on May 18, 2015. (AR 939.)

On May 13, 2013, Plaintiff filled out a Function Report. (AR 390-98.) He stated that he "continue[d] to have a lot of pain." (AR 391.) His wife helped him dress, bathe, dry and comb his hair, and shave. (Id.) She also prepared his food because he "[could not] use [his] right-hand side." (AR 392.) Throughout the report, he reiterated that his activities were limited because he "[could not] move [his] right hand," he had "no strength," and he "always [had] a lot of pain" (AR 393; see AR 392, 394-95), though he was "gradually learning to be left-handed" (AR 394). He stated that he could not "lift any weight" and could walk only "15 minutes" before needing to rest. (AR 395.)

### 3. Analysis

The ALJ was required to provide a "clear and convincing" reason for finding Plaintiff's testimony only partially credible. See Brown-Hunter, 806 F.3d at 493; Treichler, 775 F.3d at 1102. As argued by Plaintiff (see J. Stip. at 14-18, 23) and discussed below, he failed to do so.

First, the ALJ discounted Plaintiff's credibility because although he "[had] received treatment for the allegedly disabling impairments, that treatment [had] been essentially routine and conservative in nature." (AR 43.) He wrote that Plaintiff "generally received medication treatment for his conditions" and

14

that the "lack of" "more aggressive" treatment or "surgical intervention suggest[ed] [Plaintiff's] symptoms and limitations were not as severe as he alleged." (Id.)

In fact, Plaintiff had a lateral epicondylectomy of the right elbow on November 9, 2011 (AR 44), shortly before the alleged onset date. Multiple sources in the record described the surgery as "failed" (see, e.g., AR 487, 516), and Plaintiff stated that it made his pain "worse" (see AR 690-91). He was recommended additional surgery (see AR 516, 698), and Dr. Mays specifically opined that Plaintiff was "in need of more aggressive" intervention (AR 516). Further, Plaintiff's treatment was not "conservative." The record shows that Plaintiff took hydrocodone, a narcotic, for his pain (see AR 461, 466, 628, 692, 702, 716, 763, 822) and received three shock-wave treatments on his right elbow (AR 523-24, 564). He also received multiple injections to treat his right-elbow and -wrist pain. (See AR 513, 678, 690.) Finally, as noted above, he was twice recommended further surgery. (See AR 516, 698.) The use of narcotics to control pain in conjunction with multiple injections or surgery does not constitute "conservative" treatment. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, trigger-point injections, and cervical-fusion surgery not conservative); Samaniego v. Astrue, No. EDCV 11-865 JC, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when claimant was treated "on a continuing basis" with steroid and anesthetic "trigger point injections," occasional epidural injections, and narcotic medication and

doctor recommended surgery); Soltero De Rodriguez v. Colvin, No. CV 14-05765-RAO, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (management of pain through medicine, NMS/TENS unit, and spinal injections not conservative); Ruiz v. Berryhill, No. CV 16-2580-SP, 2017 WL 4570811, at *5-6 (C.D. Cal. Oct. 11, 2017) (treatment by "narcotic medication, facet joint injections, and epidural steroid injections" not conservative).

Defendant argues that Plaintiff's lack of "medical treatment for his right-elbow pain for almost a year" supports the ALJ's finding that his treatment overall had been routine and conservative. (J. Stip. at 20 (citing AR 691, 698).)[13] Although it may be true that Plaintiff's treatment was technically "conservative" during that period, the record does not support finding that his treatment as a whole was conservative, as discussed above. See Lester, 81 F.3d at 833 ("Occasional symptom-free periods . . . are not inconsistent with disability."). Further, the ALJ did not cite any gaps in treatment in finding that Plaintiff's treatment had been "essentially routine and conservative in nature." (AR 43.) "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citing Lester, 81 F.3d at 834). Thus, this reason cannot support the ALJ's

---

[13] In fact, the gap in treatment identified by Defendant lasted 10 months, from October 2013 (see AR 600-02 (Plaintiff examined at clinic for right-arm pain)) to August 2014 (see AR 691 (Plaintiff saw chiropractor for "constant" pain in right arm)). Plaintiff apparently had another 10-month gap in treatment, from August 2012 to June 2013. (See AR 465, 524.)

16

finding. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (district court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

The only other reason the ALJ cited for discounting Plaintiff's credibility was the lack of "objective clinical and diagnostic findings in the record." (See AR 44.) This reason cannot stand by itself, however, because "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)). Indeed, even if the lack of objective medical evidence is clear, that cannot be the sole reason for the credibility findings. See Kauffman v. Berryhill, 686 F. App'x 517, 520 (9th Cir. 2017); Gama v. Colvin, 611 F. App'x 445, 446 (9th Cir. 2015) (when one reason ALJ gave for discounting plaintiff's credibility was erroneous and "the only remaining reason to discount [plaintiff's] credibility was a lack of objective medical evidence," "error was not harmless").

For all these reasons, the ALJ failed to provide a clear and convincing reason for his adverse credibility determination. Plaintiff is therefore entitled to remand on this ground.

B. <u>Remand for Further Proceedings Is Appropriate</u>

Plaintiff "seeks an order from the Court reversing the final decision and awarding benefits." (J. Stip. at 23-24.) When, as here, an ALJ errs, the Court generally has discretion to remand

17

for further proceedings. See Leon v. Berryhill, 874 F.3d 1130, 1132 (9th Cir. 2017); see also Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("credit as true" doctrine is not mandatory). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit as true" rule to direct an immediate award of benefits. See Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

When the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett, 340 F.3d at 876; see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021. Such doubt exists here, given gaps in treatment for Plaintiff's right-elbow pain (see, e.g., AR 691 (stating that Plaintiff hadn't seen anyone for treatment in one year), 704 (same)) and inconsistent medical records concerning the medication he took for his pain (compare AR 692 (listing hydrocodone among current medications), and AR 702 (same), with AR 705 (listing ibuprofen as only medication taken for his

injury), and AR 710 (same)).

Accordingly, further administrative proceedings would serve the useful purpose of allowing the ALJ to reassess Plaintiff's statements' credibility, and if he again finds them "not entirely credible" (AR 43), provide a clear and convincing reason for that finding.  He may also assess the new records submitted to the Appeals Council and reevaluate Plaintiff's RFC in light of that evidence if he finds it relevant to the applicable time period. The ALJ may further reevaluate his assessment of Drs. Lopez's and Ghods's opinions and provide a better reason for rejecting them.[14]  Thus, remand is appropriate.  See Garrison, 759 F.3d at 1020 n.26.

---

[14] Plaintiff argues — without presenting the issue under a separate heading — that the ALJ did not provide a clear and convincing reason for rejecting the opinions of Drs. Lopez and Ghods.  (J. Stip. at 7-8.)  As an initial matter, because Dr. Ghods was a chiropractor, the ALJ needed to provide only a "germane" reason for rejecting his opinion.  See §§ 404.1513(d)(1), 416.913(d)(1) (chiropractors are "other sources"); Molina, 674 F.3d at 1111 (citation omitted) (testimony from "other sources" may be rejected if ALJ "gives reasons germane to each witness for doing so").  The ALJ "carefully assessed" opinions of physicians involved with Plaintiff's workers'-compensation claim, giving "little weight" to "[m]edical source statements utilizing terms specific to workers' compensation law" and to "opinions indicating temporary restrictions."  (AR 46.)  Though nothing in the record indicates that Dr. Lopez assessed functional limitations, discounting medical opinions solely because they were given in the context of a workers'-compensation claim is error.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 n.5 (overturning rejection of doctor's opinion that was furnished for workers'-compensation claim because "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them" (quoting Lester, 81 F.3d at 832)).  The ALJ may reevaluate his assessment of the opinions of Drs. Lopez and Ghods on remand.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision.

DATED: January 23, 2018  _____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[15] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."